## PROSECUTION FOR HAVING POSSESSION OF A FISHING NET.

Common Pleas Court of Shelby County.

THE STATE OF OHIO V. SAMUEL HUMBLE.

Decided, April Term, 1910.

*Game and Fish—Having Net in Possession a Misdemeanor—Intent—*
*Venue—Jurisdiction of Justice of the Peace and His Reasonable*
*Discretion—Section 1426, Relating to Possession of Fishing Nets.*

1. Where a defendant is charged with having in his possession a fishing net contrary to the provisions of Section 1426, General Code, a justice of the peace has jurisdiction to hear and determine the case himself and it is not error for him to refuse to grant a jury trial.

2. Whether the justice should grant a change of venue because he is himself a material witness is a matter for his own determination, and his reasonable discretion in that behalf will not be interfered with where it appears to a reviewing court from an examination of the evidence that the only testimony which the justice could have given would have been cumulative.

3. It is not material in such a case that the affidavit charge or the evidence establish that the defendant had the net in his possession for the purpose of catching fish.

*Charles C. Hall* and *Logan Marshall*, for plaintiff in error.
*A. J. Miller* and—*Kirtley*, contra.

MATHERS, J.

This case is here on error to the court of C. R. Hess, justice of the peace. The record shows that the defendant below was convicted on the charge of having in his possession a net, contrary to the provisions of Section 1426, General Code. He moved below for a jury trial, which motion was overruled, and the justice heard and determined the case himself. The act under which the prosecution was had (99 v. 364; Chap. 28, Div. II, Title III, Part I, General Code) provides for a jury trial in two cases only, first in a case where it is sought to forfeit or condemn property which has been illegally used; and secondly, where imprisonment is or may be part of the punishment. Neither of these cases is the

one at bar, for the punishment, upon conviction, can be a fine
only.   While the act provides for commitment to jail until the
fine and costs are paid, yet this kind of case is one where upon
summary conviction under a statute prohibiting an act otherwise
lawful, the accused may be tried without a jury.  *Inwood* v.
*State*, 42 O. S., 186.

By Section 1464, General Code, the justice had jurisdiction to
hear and determine the case and there was no error committed
by refusing to grant a jury trial.

An affidavit was filed, setting up that the justice was a mate-
rial witness for the defendant, and moving for a change of venue,
which motion was overruled and exceptions noted.   The prac-
tice act relating to change of venue in trials before justices of the
peace provides, among other things, that if the justice is
*satisfied* from the showing made that he is a material witness,
it is then his duty to order a change of venue.   This seems to
leave it to the determination of the justice according to the fact.
Probably it would be necessary for a reviewing court to look at
all the evidence to determine whether the justice ought reason-
ably to have been satisfied by the showing made.   The fact that
the justice overruled the motion shows that he was not satisfied
with the truth of the affidavit referred to; and that the justice
must be permitted to determine whether he is satisfied or not
is obvious.   The Legislature evidently intended that the justice
should exercise a reasonable discretion, in view of all the facts,
as to whether he ought to be satisfied or not.   Upon reading the
evidence in the case, the court can not see how the justice could
have been a material witness for the defendant.   The only pos-
sible testimony that the justice might have offered would have
been cumulative evidence that the net, which one of the witnesses
testified was found cut after it had been left in the room back
of the justice's office, had not been tampered with by anyone.
It is a maxim in the law, says Coke (Co. Litt., 6*b*) that "witnesses
can not testify a negative, but an affirmative."   Whether it had
or not been disturbed would hardly have been material except
perhaps as a sort of an admission against interest, somewhat in
the nature of evidence of flight after the commission of an offense
which defendant below would hardly have desired to prove, for

the only persons who had been in the room, where the net was, were defendant and his counsel.  The gravamen of this offense however, is not the use of the net cut or having *it* in possession. It is having possession of the net described in the affidavit.  While the evidence of possession of other nets than the one described in the affidavit might properly be admitted, if it were necessary to prove intent, yet as this offense is such a one that it is not necessary to prove intent, I think the testimony as to the possession of the other net, at least what was done to the net in the justice's office, if anything, was immaterial.

I can not find any prejudicial error in the admission or rejection of evidence in this respect.  In the view I take of the character of the offense, it was not necessary to prove intent to use the net and hence evidence of the possession of other nets was incompetent.  The net itself, being a material thing, must have a situs some place.  The question is whether or not it was in the possession of the defendant.  So while the testimony admitted was not competent yet it could hardly have been prejudicial. It was at best not material.

This brings the court to a consideration of the other point which appears to be the main reliance of the defendant below, namely, that the affidavit did not show and the evidence is insufficient to prove that the net was in the possession of the defendant for the purpose of catching fish.  In support of this contention defendant's counsel cite the court to 3 Nisi Prius. 181. The section against which defendant below offended provides that ''no person shall draw, set, place, locate, maintain or have in possession a pound net, trammel net, fyke net, set net, seine, fish trap, throw or hand line with more than three hooks attached thereto, or any other device for catching fish;'' then comes the exception. Counsel contend that, as in the 3 Nisi Prius cited, where a statute of similar import was construed, the court held it necessary to aver the purpose for which the net was *maintained*, so, while the statute here involved does not read ''the possession of any of these nets or things with which to catch fish,'' yet the court ought to read that into the statute because, as the purpose of the act was to protect fish, the possession of the net for any other purpose than for fishing would not be illegal.  But the grammar

of the section does not justify this conclusion. The section reads that "no person shall draw, set, place, locate, maintain or *have in possession* a pound net," etc. Then it goes on to say, "or any other device for catching fish," implying that a set net, for instance, or a seine, or a fyke net necessarily and from its very nature is an implement for catching fish. But the phrase, "for catching fish," is not to be annexed to each of the nouns so as to make it read, for instance, "no person shall have in possession a pound net for the purpose of catching fish." That is not the reading of the statute. A paraphrasis of the provision would be "no person shall use a pound net or have the same in his possession." It seems to the court that the Legislature was very careful to avoid the effect of the decision in 3 Nisi Prius, to which counsel refer. The court there held that the indictment, which charged that the defendant "did unlawfully maintain a certain fish net in the waters of Lake Erie within one-half mile of the mouth of Grand river, a river flowing into Lake Erie," etc., was an insufficient averment of all the material facts, because it did not charge that the net was set, opened out, or maintained in such condition that fish could be caught in it, or that it was being maintained there to catch fish.

Counsel will observe that the gravamen of the offense in the Owen case, which is the one reported in the 3d Nisi Prius, was the *maintaining* of a net within a half mile of the mouth of a river, etc. And the court there goes on to say that "maintain" implied the *use* of the net for some purpose. Manifestly a thing can not be *used* without an intent to do so unless by accident. The court there observed that a net drawn up on a reel, for instance, is not "maintained," within the meaning of the section, because fish could not be caught in it in that position. The affidavit in the case at bar is not for maintaining a net, but for having it in possession. Now, of course, to maintain a net implies that it must be maintained or used for some purpose which might or might not be unlawful. But the offense of maintaining is different from that of having in possession for one might have in possession without any purpose.

There might still be some ground for the contention of counsel that it was necessary to put in the affidavit the averment of

having in possession for the purpose of catching fish, if it were not for the fact that, in view of the difficulty of enforcing the provisions of the act, and in view of other provisions of the act with respect to possession which *is* lawful, manifestly the Legislature has so worded this section as to make it unlawful merely to have in possession any of the articles mentioned there, on the theory probably that possession might superinduce the desire to fish, and the desire engender the intent, and the intent be effectuated, and thus the evil occur which it was sought to prevent. In other words, the possession of the articles mentioned, including a net, is outlawed, and it is unlawful to have possession of them unless the possessor comes within the permission of Section 1458, General Code, or is licensed to use a net in the Lake Erie fishing district. For Section 1458 provides that "nothing in this act shall apply to nets, traps, or other devices, in the possession of *bona fide* manufacturers or dealers, when such nets, traps, or other devices are kept in the regular places of business of such manufacturers or dealers, or are in the course of transportation; or to nets, traps or other devices in the possession of common carriers for transportation." Unless one having possession of a net comes within the terms of this section, which is broad enough to exempt persons carrying a net through the inland fishing district, or is licensed to use a net in the Lake Erie fishing district, it would seem, under the doctrine of *expressio unius*, etc., that the mere possession is illegal. Section 1426 still makes it an offense to maintain a net; so that if the defendant were charged with having maintained a net, counsel's citation of the Owen case might be more in point. But, as was said, it is one thing to maintain a net and another to have it in possession. To maintain a net is to set it at some place for catching fish, and unless it is set for that purpose, it is not being maintained; but one may have a net in possession and have it hanging on the wall of a room, for instance. Whether the Legislature meant to penalize a display of trophies of fishing expeditions that men are wont to treasure, and meant that they might be punished for having a net hung up on the wall for an ornament, may be doubted. Possibly such a case might come within the doctrine of the classic instance where it

was held that a surgeon who bled a person who fell ill in the street was not guilty under an act making it a felony to shed blood in a public place. But in view of the difficulties of enforcing the game laws, it would seem that the legislative intent in wording the section as it is was to make the mere possession of such a net as the one in question, within the inland fishing district of the state, an offense against the act. For if it were necessary to prove an intent to use the net, the inhibition against the possession of a net would be practically meaningless. For, unless the possessor announced or admitted his intent, it would be impossible to show with what intent he held possession. The fact of his having used it to fish with before would afford no satisfactory proof of the intent with which he at the moment was in possession. For he may have given up all thought of its use for fishing purposes and yet, later, when he heard the "call of the wild," form a new intention to devote it to its destined end. And thus would transpire the evil the statute was directed against. The Legislature intended to and did make unlawful certain acts with respect to fishing, and then it went further and penalized the very appearance of evil.

Upon the weight of the evidence the court can not say that the judgment below ought to be reversed. Where it is apparent that reasonable minds might differ as to conclusions to be reached from the testimony, a reviewing court ought not lightly set aside a finding of facts in the court below as against the weight of the evidence. It is the province of the trier of the facts to believe or disbelieve any of the witnesses. He has the chance to observe their demeanor on the stand and is in a better position than a reviewing court to reach a correct conclusion as to the facts in the case. It having been within the province of the court below to reach a conclusion upon the facts, and the testimony being such that its conclusions are reasonably supported by the testimony, the court feels that it has no authority to set it aside. So that the judgment of the court below will be affirmed with costs.